# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

BOBBY ALEXANDER,

    Plaintiff,

v.

EQUIFAX INFORMATION SERVICES, LLC, et al.,

    Defendants.

Case No. 2:17-cv-00139-APG-NJK

**ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (3) DENYING MOTIONS TO STRIKE AND TO SUBMIT SUPPLEMENTAL AUTHORITY**

(ECF Nos. 75/79, 80, 89, 93, 94)

    This case arises from a dispute over the reporting of plaintiff Bobby Alexander's credit information by information furnishers and consumer reporting agencies (CRAs), including the remaining defendant Experian Information Solutions, Inc. After obtaining a consumer file disclosure from Experian, Alexander disputed some of the information on the report. Alexander alleges that in responding to this dispute, Experian has violated various sections of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq*.

    Both parties now move for summary judgment. I grant summary judgment to Experian on all claims. I deny Experian's motions to strike as moot and deny Alexander's motion for leave to submit supplemental authorities.[1]

**I.    BACKGROUND**

    In February 2005, Alexander obtained a mortgage loan from former defendant Flagstar Bancorp, Inc. for approximately $400,000 for a residential home in Las Vegas. ECF No. 80-3 at

---

[1] Preliminarily, I note that Alexander's motion for summary judgment (ECF No. 75/79) and his response to Experian's motion (ECF No. 80) contain 230 and 236 footnotes, respectively. Worse, those footnotes are written in very small font, violating Local Rule IA 10-1(a)(4), which requires "size 12 font or larger." It is apparent this was done to circumvent the court's 30-page limit on motions for summary judgment. LR 7-3. Such tactics will not be tolerated in the future. All text, including footnotes, "must be size 12 font or larger."

59. In the fall of 2010, Alexander stopped making his mortgage payments, and in January 2011 a Notice of Default and Election to Sell was recorded. *Id.*; *id.* at 118.

Alexander filed for Chapter 13 bankruptcy on March 15, 2011. *Id.* at 39–95. The petition included the Flagstar account as a secured claim. *Id.* at 59. On May 17, 2012, the bankruptcy court entered an order confirming Alexander's Chapter 13 plan. ECF No. 79-5. As part of this confirmed plan, the Flagstar account was listed as a "[s]ecured claim satisfied by the surrender of collateral." *Id.* at 7. The order modified the automatic bankruptcy stay, allowing Flagstar "to exercise its remedies under applicable non-bankruptcy law." *Id.*

Thereafter, on June 11, 2012, a Notice of Trustee's Sale was recorded. ECF No. 80-3 at 124. A public foreclosure auction for the home was held on July 5, 2012, and the highest bidder was a third party who was not the foreclosing beneficiary. *Id.* at 128. A Trustee's Deed Upon Sale was recorded on July 13, 2012. *Id.*

Alexander's bankruptcy was discharged on June 20, 2016. *Id.* at 107–08. On August 18, 2016, Alexander requested and received from Experian an online copy of his consumer file disclosure.[2] ECF No. 79-9 at 3–14. On the Flagstar tradeline, the report noted that the account would be "[o]n record until" June 2018. *Id.* at 5. It stated a "Recent Balance" of "$0 as of 07/05/2012"; a $0 for the "High balance," "Monthly payment," and "Recent payment amount" categories; and an account status of "Foreclosed." *Id.* In the "Account history" section, the report noted that payment was late in October, November, and December of 2010, and included an "FS" notation for the months of January and February 2011. *Id.* There is an "OK" notation for March through September of 2011, an "ND" notation for October of 2011 through January of 2012, a notation of 180 days past due for February through June of 2012, and an "F" notation for July 2012. *Id.* Under the account history section, there is a list explaining these notations, stating the account was "180 days past due as of Feb 2012 to Jun 2012," "Foreclosure proceedings started as of Feb 2011, Jan 2011," and "Foreclosure as of Jul 2012." *Id.*

---

[2] A consumer file disclosure or consumer credit disclosure refers to the document CRAs provide to consumers seeking access to their own credit information directly from the CRA. ECF No. 80-1 at 2. A consumer report or credit report refers to the document provided by CRAs to third party creditors, insurers, or employers. *Id.*; *see also* 15 U.S.C. § 1681a(d).

Alexander disputed the reporting on the Flagstar account in a September 26, 2016 letter to Experian. *Id.* at 2. In that letter, Alexander states that the notation of "180 days past due as of Feb 2012 to Jun 2012" was inaccurate because he "was current with all required obligations to Flagstar Bank at this time and it was inaccurate to state that [he] was late." *Id.* He states that the "Foreclosure as of Jul 2012" statement and "F" notation were inaccurate because "Flagstar Bank was being paid as legally required during this time and I was current with all my obligations and performing all duties owed to Flagstar Bank at this time." *Id.* Finally, he disputes the account status of "Foreclosure" because he "performed all obligations required to Flagstar Bank." *Id.* The letter also requests that if Experian "choose[s] not to correct the disputed information, please include a statement on my credit report stating that I dispute the above information." *Id.* The letter does not mention Alexander's bankruptcy. The only document attached to the letter is a copy of the August 2016 consumer file disclosure.

Experian received this dispute letter on October 5, 2016. ECF No. 80-1 at 3. Two days later, Experian sent Alexander's dispute letter and an automatic consumer dispute verification (ACDV) form to Flagstar. *Id.* Flagstar responded on October 11, 2016. ECF No. 79-11. Flagstar's ACDV response apparently adheres to Metro 2, the standard format furnishers use to communicate credit information to CRAs. *Id.*; ECF No. 92-3 at 4. The Metro 2 system of reporting codes is outlined in a Credit Reporting Resource Guide created by the Consumer Data Industry Association, of which Experian is a member. ECF No. 92-3 at 4.

Flagstar reported an account status code of "94"; a balance, amount past due, and scheduled monthly payment of "0"; and "Balance" and "Closed" dates as "07/05/2012." *Id.* In the payment history grid, Flagstar reported a "D" for all months in 2012 except for June, in which it reported a code of "H." *Id.* According to the Credit Reporting Resource Guide, an account status code of 94 means "Foreclosure completed; there may be a balance due." ECF No. 79-23 at 215. If the consumer is not responsible for the remaining balance on the account, the code 94 should be accompanied by a current balance of zero and a report of the date the foreclosure was completed as the "Date Closed." *Id.* This is what Flagstar reported on its ACDV. Also according

to the guide, the notation "H" in the payment history profile means "Foreclosure Completed," while "D" means "No payment history available this month." *Id.* at 64.

On October 11, 2016, Experian sent Alexander the results of its reinvestigation of his dispute and an updated consumer file disclosure. ECF No. 79-12. On the Flagstar tradeline, the "Monthly payment" and "High Balance" were noted as "Not reported," and the "Recent balance" stated "$0 as of Jul 2012." *Id.* at 5. There was no notation for a "Recent payment amount." *Id.* The account status was still reported as "Foreclosed" and noted that the account "is scheduled to continue on record until Jul 2017." *Id.* It also noted that the tradeline "was updated from our processing of your dispute in Oct 2016." *Id.* In the payment history section, the report noted late payments from October 2010 through February 2011, no data from March 2011 through May 2012, and then "F" notations in June and July 2012.

According to Experian's internal ACDV code guide, the account status code "94" means "Foreclosure completed/collateral sold to settle defaulted mortgage" and the payment history code "H" means "Foreclosure." ECF No. 79-24 at 3, 6. In its payment history legend in the consumer file disclosure, Experian defines "F" as "Foreclosed." ECF No. 79-12 at 4.

**II.      ANALYSIS**

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.

2000). I view the evidence and draw reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenck, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Violations of 15 U.S.C. § 1681i(1)(A) and 15 U.S.C. § 1681e(b)**

Section 1681e of FCRA outlines CRA compliance procedures, and requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." To bring a claim under this provision, "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

If a consumer disputes the accuracy of information in his file, the "CRA must conduct a free and reasonable investigation within thirty days of a consumer informing the CRA of disputed information." *Shaw v. Experian Info. Sols., Inc.*, No. 16-56587, 2018 WL 2424105, at *4 (9th Cir. May 29, 2018) (citing 15 U.S.C. § 1681i(a)(1)(A)). To bring a claim under § 1681i, an actual inaccuracy must exist. *Id.*

"Thus, to sustain either a § 1681e or a § 1681i claim, a consumer must first make a prima facie showing of inaccurate reporting." *Id.* at *5 (quotations omitted). Reporting can be inaccurate if it is patently incorrect or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id.* (quotation omitted).

*1. Account Status*

In his complaint, Alexander alleged Experian violated these FCRA provisions by inaccurately reporting the Flagstar account as foreclosed because it had been discharged in his bankruptcy proceedings. Alexander argues reporting the Flagstar account as "Foreclosed" was inaccurate because the account was listed as "to be surrendered" in his Chapter 13 petition and confirmed plans. Experian contends the fact that Alexander voluntarily surrendered the property upon confirmation of his bankruptcy plan does not mean the property was not foreclosed on.

The May 2012 bankruptcy plan confirmation lifted the automatic bankruptcy stay as to the Flagstar account and allowed Flagstar "to exercise its remedies under applicable non-bankruptcy

law." ECF No. 79-5 at 7. The voluntary surrender authorized in the confirmed bankruptcy plan meant that Alexander surrendered the property as collateral for the unpaid mortgage, relinquishing his legal claim to the property. Following the foreclosure sale, Alexander no longer had any personal liability on the account. The fact that Alexander voluntarily surrendered his claim on the property does not mean that it was not foreclosed upon in satisfaction of the mortgage. The bankruptcy discharge did not negate the fact of the foreclosure. The reporting of the Flagstar account as foreclosed is not patently inaccurate.

Nor is it materially misleading. Alexander argues that it was misleading to suggest "that Flagstar had to forcibly 'foreclose' what [he] voluntarily gave back." ECF No. 82 at 17. Yet, that is exactly what happened. Alexander defaulted on his mortgage, and Flagstar chose to foreclose on the mortgaged property. As part of his bankruptcy plan, Alexander voluntarily surrendered the property as collateral for any further personal liability, but Flagstar still had to foreclose on the property to satisfy a portion of the debt. *See* ECF No. 80-3 at 128 (Trustee's Deed Upon Sale stating the amount of unpaid debt and costs as $434,702.33 and the amount paid at the sale as $191,000). "[T]he very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer." *Carvalho v. Equifax Info. Svcs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (quotation omitted) (alteration in original). Alexander has not shown that stating the account status as foreclosed was materially misleading.

*2. Account/Payment History*

In his summary judgment briefing, Alexander makes the new allegation that it was inaccurate to report the account as foreclosed in both June and July 2012 in the payment history section in the consumer disclosure file created after Experian's reinvestigation. He does not respond to Experian's argument that this is a new theory of liability that cannot be the basis for summary judgment. Alexander did not allege in his complaint that Experian's reporting was inaccurate because of this double notation and failed to provide Experian with adequate notice of this new allegation. He therefore cannot raise it for the first time at summary judgment. *See*

*Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (citing Federal Rule of Civil Procedure 8(a)(2)).

To the extent Alexander's motion could be construed as a motion to amend to add this claim, I deny it. Where a party seeks to amend a pleading after expiration of the scheduling order's deadline for amending the pleadings, the moving party first must satisfy the stringent good cause standard under Federal Rule of Civil Procedure 16. *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Rule 16(b)'s "good cause" standard centers on the moving party's diligence. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson*, 975 F.2d at 609. The good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action. *See United States v. Dang*, 488 F.3d 1135, 1142–43 (9th Cir. 2007); *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1016–17 (9th Cir. 1999). Whether to modify the scheduling order's amendment deadline lies in my discretion. *Dang*, 488 F.3d at 1142–43.

The scheduling order's deadline to amend pleadings was May 16, 2017. The parties attempted to extend this deadline, but were denied. ECF Nos. 47, 50. Alexander did not attempt again to extend the deadline or amend his pleadings. He filed his motion for summary judgment on November 13, 2017, six months after the amendment deadline. Alexander has had the reinvestigation consumer file disclosure since the inception of this litigation, so knew about the facts supporting this claim from the outset.

Therefore, good cause does not support amending the scheduling order, and I decline to do so. Alexander has not shown an inaccuracy in Experian's reporting of the Flagstar account status. I grant Experian summary judgment on Alexander's claims that it violated § 1681e(b) and § 1681i(a).

/ / / /

/ / / /

**B. Violation of § 1681i(c)**

If a CRA's reinvestigation of a dispute does not resolve that dispute, a "consumer may file a brief statement setting forth the nature of the dispute." 15 U.S.C. § 1681i(b). When a statement of dispute is filed, as long as it is not frivolous or irrelevant, "the consumer reporting agency shall, in any subsequent consumer report containing the information in question, clearly note that it is disputed by the consumer and provide either the consumer's statement or a clear and accurate codification or summary thereof." 15 U.S.C. § 1681i(c).

Alexander argues that he made a request under § 1681i(b) in his initial dispute letter. In that letter, he wrote: "If you choose not to correct the disputed information, please include a statement on my credit report stating that I dispute the above information." ECF No. 79-9 at 2. Experian contends that this request, because it was made before any reinvestigation, does not qualify as a statement of dispute. Because no other statement was filed after the reinvestigation, Experian argues it has not violated § 1681i(c).

The statutory language sets up a process for reinvestigation and subsequent dispute. Under §1681i(a), a consumer may notify a CRA of his dispute with certain information in his file, and the CRA must conduct a reasonable reinvestigation. If the reinvestigation does not resolve the dispute, the consumer may file a statement of dispute (§ 1681i(b)) and the CRA must generally include that dispute in any subsequent reporting (§ 1681i(c)). Given this procedure, "reinvestigation is a predicate to the filing of a statement of dispute, and hence that statement's inclusion in any consumer report." *Guimond*, 45 F.3d at 1335.

Therefore, Alexander's request in his initial dispute letter does not satisfy the requirements of § 1681i(b), and Experian's obligations under § 1681i(c) were not triggered. I grant Experian summary judgment on Alexander's claim under § 1681i(c).

**C. Violation of § 1681g**

Section 1681g(a) provides in part that "[e]very consumer reporting agency shall, upon request . . . clearly and accurately disclose to the consumer . . . [a]ll the information in the consumer's file at the time of the request." A consumer's file "includes all information on the

consumer that is recorded and retained by a [CRA] that might be furnished, or has been furnished, in a consumer report on that consumer." *Shaw*, 2018 WL 2424105 at *7 (quotation omitted) (alteration in original).

Alexander argues that differences between the consumer file disclosure originally provided to him in August 2016 and a copy produced during discovery "leav[e] no question that both reports were fundamentally misleading and confusing" and as a result, it is "thoroughly unclear whether [Experian] truly provided [Alexander] with all of the information in his file." ECF No. 82 at 21. He also contends that the double foreclosure notation in the post-reinvestigation consumer file disclosure is inaccurate and unclear.

Experian argues these allegations were not in Alexander's complaint, in which he alleged Experian violated § 1681g because reporting the foreclosure at all was inaccurate and confusing in light of his bankruptcy discharge. Moreover, Experian contends Alexander never provides evidence or articulates what information was not disclosed to him. In response, Alexander argues Experian often objects to motions to amend so that was not a viable option, and Experian could have done discovery to flesh out his claims regarding missing information.

As discussed above, Alexander's complaint did not include allegations regarding the inaccuracy of the double foreclosure notation in the post-reinvestigation consumer file disclosure. And because he had this document from the outset of litigation, Alexander has not met Rule 16's good cause standard for amending his pleading.

As to the claim relying on the differences between the original version of the August consumer file disclosure and the version produced in discovery, Alexander did not have both copies from the outset of litigation. While neither party tells me when the discovery version was produced to Alexander, he at least had it at the time of his deposition in July 2017, where he was questioned about it. *See* ECF No. 79-22 at 25–27. Alexander was not diligent in moving to amend upon discovering new facts on which he bases this new claim so I deny amendment under Rule 16.

Even if I were to consider this as a motion under Rule 15, I would still decline to allow amendment. Leave to amend under Rule 15 "should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Johnson*, 975 F.2d at 607. In this case, amendment would be futile.

A CRA "must do more than simply make an accurate disclosure of the information in the consumer's credit file." *Gillespie v. Equifax Info. Svcs., L.L.C.*, 484 F.3d 938, 941 (7th Cir. 2007). The disclosure must be "sufficient to allow the consumer to compare the disclosed information from the credit file against the consumer's personal information in order to allow the consumer to determine the accuracy of the information set forth in her credit file." *Id.*; *see also Shaw*, 2018 WL 2424105 at *8.

Alexander argues that the disclosures were not clear because, among other things, certain payment amounts were listed as "$0" in the original version and "Not reported" in the discovery version. *Compare* ECF No. 79-9 at 5 *with* ECF No. 79-10 at 6. However, the operative question under § 1681g is whether a disclosure is unclear such that the consumer cannot determine the accuracy of the information in that disclosure. Alexander does not allege that the original version was so unclear that he could not determine its accuracy; indeed this would be a losing argument, as he was able to compare the disclosed information to his own and dispute its accuracy. *See* ECF No. 79-9. Nor does Alexander allege that the discovery version itself is so unclear that he could not determine the accuracy of the information in it. He has not produced any evidence to show that the disclosures were so unclear as to be insufficient for him to determine their accuracy.

Nor has Alexander shown that any information in his file was not included in the consumer file disclosures. He argues only that it is "thoroughly unclear" whether all information was provided because of the differences between the two versions. However, he has pointed to no information in his consumer file that was not included in his consumer file disclosures.[3]

---

[3] Alexander's attempt to do so through a request for leave to provide "supplemental authority and briefing" or to reopen discovery does not save this claim. This motion is based on an article by a cybersecurity firm about a data breach of an analytics firm that used data compiled in a database belonging to Experian Marketing Services. *See* ECF Nos. 94-1; 94-2. This article is

Alexander's argument that Experian should have asked him what information was missing impermissibly shifts the pleading burden. It is the plaintiff's burden to adequately allege his claims. Alexander's complaint alleges that reporting the foreclosure was unclear given the bankruptcy discharge. How Experian would have known from the complaint's allegations to pursue discovery about missing information in Alexander's consumer file disclosures is anyone's guess.

Thus, to the extent Alexander's motion can construed as a motion to amend, I deny it. I grant Experian summary judgment on Alexander's § 1681g claim.

### D. Alexander's Rule 56(d) Request

In his opposition to Experian's motion for summary judgment, Alexander asks that I delay my ruling and reopen discovery under Rule 56(d) to allow for the production of a "technical manual."[4] If the nonmoving party believes that it cannot present facts essential to its opposition without discovery, then it can bring a motion under Rule 56(d) requesting additional time. Under that rule, a party requesting additional time to conduct discovery to oppose summary judgment "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). If the nonmoving party does not satisfy these requirements, I may rule on summary judgment without granting additional time for discovery. *Id.*

Alexander has not shown that the technical manual is essential to his opposition. He argues that if I accept Experian's argument that only certain information must be disclosed to a consumer under § 1681g, then the technical manual is necessary to show that some information in his consumer file disclosure was disclosed to third parties. Because I granted Experian summary judgment on Alexander's § 1681g claim on different grounds, this argument is unavailing. Therefore, I decline to defer judgment or reopen discovery under Rule 56(d).

---

neither binding authority, nor is it or any further briefing or discovery necessary to rule on the motions for summary judgment. I deny this request.

[4] Alexander previously moved to compel the production of this document, which was denied without prejudice. ECF No. 66.

### III. CONCLUSION

IT IS THEREFORE ORDERED that defendant Experian Information Solutions, Inc.'s motion for summary judgment **(ECF No. 80) is GRANTED.**

IT IS FURTHER ORDERED that plaintiff Bobby Alexander's motion for partial summary judgment **(ECF No. 75/79) is DENIED.**

IT IS FURTHER ORDERED that Experian's motions to strike **(ECF Nos. 89, 93) are DENIED as moot.**

IT IS FURTHER ORDERED that Alexander's motion to for leave to supplement **(ECF No. 94) is DENIED.**

IT IS FURTHER ORDERED that the clerk of court is directed to enter judgment in favor of Experian and against Alexander.

DATED this 15th day of June, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE